RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
ALEXANDRIA, LOUISIANA
DATE 11/15/06
BY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| DARRYL JERRELL BROWN,<br>Plaintiff | CIVIL ACTION<br>Section "P"<br>NO. CV05-00967-A |
| VERSUS | |
| RAPIDES SHERIFF DEPT., et al.,<br>Defendants | JUDGE DEE D. DRELL<br>MAGISTRATE JUDGE JAMES D. KIRK |

### REPORT AND RECOMMENDATION

Before the court is a civil rights complaint filed pursuant to 42 U.S.C. §1983, in forma pauperis ("IFP"), by pro se plaintiff, Darryl Jerrell Brown ("Brown") on or about June 3, 2005 and amended on September 9, 2005(Doc. Items 1 and 20). Brown, a pretrial detainee, filed suit against the Rapides Parish Sheriff Department, Warden Vernon Creecy and Deputy Chance Cappel alleging use of excessive force in violation of his constitutionally protected rights.[1] Brown sought monetary and injunctive relief. He is currently incarcerated at the Rapides Parish Detention Center ("RPDC") in Alexandria, Louisiana.

Brown contends that on April 27, 2005, he was called by Warden Creecy to discuss a problem that occurred on his cellblock. Brown

---

[1] The Rapides Parish Sheriff's Department was dismissed from the lawsuit as it is not a legal entity capable of being sued. (Doc. Item 21).

5

states that he was having a conversation with Warden Creecy when, without provocation, Deputy Cappel subjected him to a shock by a taser gun. Brown claims he was told to lie down on the ground for the taser wires to be removed when he was handcuffed and shocked again. He contends he sustained injuries to his back and shoulders which required medical treatment.

Defendants, Warden Creecy and Deputy Cappel, filed a motion for summary judgment (Doc. Item 40) which is currently before the undersigned for report and recommendation.

## Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure mandates that a summary judgment:

> shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, [submitted concerning the motion for summary judgment], if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Paragraph (e) of Rule 56 also provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts

2

submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

A party seeking summary judgment always bears the initial burden of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); International Assoc. of Machinists & Aerospace Workers, Lodge No. 2504 v. Intercontinental Mfg. Co., 812 F.2d 219, 222 (5th Cir. 1987). Once this burden has been established, the burden shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986).

### Law and Argument

Brown, a pretrial detainee, claims that his constitutional rights were violated by use of excessive force, specifically, being shocked with a taser gun by Deputy Cappel. Because Brown is a pre-trial detainee, it is the Due Process Clause of the

Fourteenth Amendment which is the appropriate constitutional basis for determining whether use of force is excessive. <u>Valencia v. Wiggins</u>, 981 F.2d 1440, 1449 (5th Cir. 1993). However, regardless of whether the alleged violation is of the Fourteenth or the Eighth Amendment, the test to resolve questions regarding use of excessive force is the same. That test is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." <u>Id.</u> Objective factors the trier of fact should consider in determining the subjective intent of the alleged wrongdoer, include: (1) the extent of the injuries suffered, (2) the apparent need for the application of force, (3) the degree of force exerted, (4) the threat reasonably perceived by the detention facility official, and (5) the need to act quickly and decisively. <u>Hudson v. McMillian</u>, 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).

Brown contends that Deputy Cappel shocked him with the taser gun for no apparent reason; however, the evidence, including the video surveillance, the Supplemental Report and Supervisory Taser Use Report Brown claims exculpate him of any wrongdoing, reveal otherwise. (Doc. Item 40, Exs. 1,2,2A,2B,3A). The video shows Brown being escorted to the Control Center of DC-1 and Warden Creecy exiting the Control Center. Brown immediately becomes irritated. After an exchange of words, Warden Creecy indicates that he is no longer interested in speaking with Brown and returns

4

to the Control Center. Brown becomes increasingly angry and approaches the Control Center door. In order to keep Brown from entering the Control Center, Deputy Cappel administers a shock to Brown via the taser gun. While the shock startles Brown, it does not result in a loss of motor skills as the video shows Brown turning around to face Deputy Cappel and backing away.

Brown contends he was shocked a second time after he was handcuffed. While Deputy Cappel does not dispute the fact that Brown was shocked a second time, he does deny the shock was administered subsequent to Brown being placed in handcuffs. The video reveals the second shock was administered prior to Brown being handcuffed; thus, supporting Deputy Cappel's statement that the shock was administered because Brown continued to refuse to comply with the guards' orders.

Brown alleges he suffered injuries to his back and shoulders, but notations in Brown's medical record (Doc. Item 40, Ex. 4) on April 28, 2005, the day after the incident, indicate there were "no unusual after affects" from the taser shock, there were "2 mosquito bite lesions on his mid back" and Brown's right shoulder was "tender due to excess exercise." Absent from the medical record is any comment the two lesions were bleeding or weeping puss as is contended by Brown. Brown's claims of injury cannot stand as there is nothing on the video to indicate the two shocks from the taser did anything more than startle him. After both of the shocks, he

5

shocks, he had no problems moving, he continued to speak, and subsequent to the second shock, he began to follow orders. Furthermore, the doctor's notes reveal no problems associated with the incident which is confirmed by Brown's acknowledgment in his complaint that he has had no long term effects.

"In making and carrying out decisions involving the use of force to restore order in the face of a prison disturbance, prison officials undoubtedly must take into account the very real threats the unrest presents to inmates and prison officials alike, in addition to the possible harms to inmates against whom force might be used." Whitley v. Albers, 475 U.S. 312, 320. 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986). Prison officials have the "responsibility of ensuring the safety of the prison staff, administrative personnel, and visitors as well as the 'obligation to take reasonable measures to guarantee the safety of the inmate themselves.'" Id., citing Hudson v. Palmer, 468 U.S. 517, 526-27, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984). This is exactly what Deputy Cappel considered and what called him to take action.

The Control Center is a secure area which inmates are not allowed to enter so as to maintain order and prevent potential escapes. To allow a breach would have jeopardized the well being of the Warden, the guards, the inmates and any visitors present at RPDC. Brown refused to follow orders to return to his cell, he became increasingly loud, irate and uncontrollable. Deputy Cappel

knew first hand what a shock by a taser gun felt like, and he believed that this was a reasonable measure he could use to regain control of the situation.

Deputy Cappel applied force in a good faith manner to restore discipline, not simply to cause harm to Brown. The amount of force used was not unreasonable to the threat. There was no malicious intent. There was simply a need to restore order and the most effective way of doing so was to issue a shock by a taser gun. It is evident that the facts material to a determination of whether the use of force was excessive are not in dispute. The force applied by Deputy Cappel was applied in good faith, was objectively reasonable and not excessive.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that defendant's motion for summary judgment be GRANTED as there is no genuine issue of material fact in dispute.

Under the provisions of 28 U.S.C. §636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from the service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections with **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered

by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON THE GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana on this 14th day of November, 2006.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE